IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CEDEAL HARPER,

        Petitioner,

v.                                    CIVIL ACTION NO. 3:12-00653

DAVID BALLARD, Warden,
Mount Olive Correctional Center,

        Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending is Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  ECF No. 2.  Also outstanding are Petitioner's Motion for Partial Summary Judgment, ECF No. 6; Application to Proceed without Prepayment of Fees and Costs, ECF No. 1; and twenty various incidental motions, ECF Nos. 3, 4, 5, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 37, 38, and 39.  This matter was referred to Magistrate Judge Eifert for Proposed Findings and Recommendation ("PF&R").  The PF&R was submitted, ECF No. 33, and the parties each filed objections.  Consequently, this matter is now ripe for disposition.

**I.    BACKGROUND**

**A.    State Proceedings**

On April 19, 2006, a jury convicted Petitioner Cedeal Harper of first-degree murder in the Circuit Court of Cabell County, West Virginia.  Trial Tr. at 753, ECF No. 6-3.  The next day, Petitioner was sentenced to a term of life imprisonment with mercy.  ECF No. 2 at 1.  Petitioner, through counsel, then filed post-trial motions for judgment of acquittal, a new trial, and a stay of

execution of sentence pending appeal. Criminal Docket, Apr. 28, 2006, Resp't's Ex. 1, ECF No. 27-1. These motions were denied in their entirety. Petitioner was appointed several attorneys to represent him and had significant disagreements with each, eventually resulting in the court allowing him to appear *pro se*. The court resentenced Petitioner three times, to begin new periods to allow Petitioner the opportunity to file a timely direct appeal of his conviction to the West Virginia Supreme Court of Appeals.[1] The last resentencing occurred on April 30, 2010. To date, Petitioner has not filed an appeal.

Although Petitioner did not directly appeal his criminal case, he did initiate habeas proceedings in state court. On December 12, 2008, Petitioner filed his first petition for a writ of habeas corpus in the Circuit Court of Cabell County. Before the court disposed of the first petition, Petitioner filed a second in the same court. The two actions were consolidated under Case Number 08-C-1050[2] and Petitioner was appointed his first habeas counsel, Dennis Kelley. Petitioner filed an amended petition on March 17, 2009. In April 2009, the court allowed Mr. Kelley to withdraw as counsel and appointed Steven Jarrell in his place. Between April and July 2009, Petitioner filed several *pro se* motions, including a motion for summary judgment, despite the fact that Mr. Jarrell had been appointed to represent him. A second amended petition was filed on July 24, 2009.

In September 2009, the circuit court scheduled an omnibus hearing on Petitioner's petitions and outstanding motions. Before that hearing was held, however, Petitioner filed a

---

[1] On October 22, 2009, Petitioner was resentenced to life with mercy. On November 24, 2009, Petitioner was resentenced to life with mercy. On April 30, 2010, Petitioner was sentenced to life without mercy. The Court presumes that the discrepancy in the terms of the most recent sentence is due to clerical error. The difference, however, is of no consequence here, given the Court's disposition of this matter on procedural grounds.

[2] The docket sheet for Petitioner's state habeas case is in the record as Respondent's Exhibit 2, ECF No. 27-1.

motion to stay the habeas proceedings. The court granted the motion and stayed the proceedings. Mr. Jarrell was then permitted to withdraw as counsel, and the court appointed B. Luke Styer in his place. In February 2010, Petitioner filed a third amended petition, followed by a fourth amended petition one month later. The circuit court lifted the stay of proceedings on June 3, 2010.

The record indicates that during this period, Petitioner continued to have conflicts with his appointed counsel as well as the presiding circuit judge. These conflicts resulted in Petitioner filing for a writ of mandamus from the West Virginia Supreme Court of Appeals in January 2011. In the mandamus action, Petitioner sought a writ requiring the circuit court judge to rule on outstanding motions and also requiring Petitioner's appointed counsel at the time to file an appeal or amended petition. ECF No. 27-3 at 8.

While the first writ of mandamus was pending, Petitioner filed a fifth amended habeas petition in the circuit court and requested a status hearing. The circuit court scheduled a status hearing for May 13, 2011. Before the status conference could be held, however, Petitioner filed a second request for a writ of mandamus with the West Virginia Supreme Court of Appeals, in which he complained about the performance of his appointed attorney and requested that the court require the circuit court judge to take various actions in his pending habeas proceeding. Ex. 8, ECF No. 27-3 at 24. Before the court took action on the second writ of mandamus application, Petitioner filed a sixth amended petition for a writ of habeas corpus on June 17, 2011, followed by a seventh amended petition on July 5, 2011. One week later, on July 12, 2011, Petitioner filed a third application for a writ of mandamus with the West Virginia Supreme Court of Appeals. Petitioner sought, *inter alia*, a writ requiring the circuit court judge to allow

Petitioner to represent himself, or to force his appointed attorney to withdraw. Ex. 8, ECF No. 27-3 at 29.

The circuit court entered an order on August 15, 2011, allowing Petitioner to proceed *pro se* and appointing Stephen Flesher as standby counsel. The court also scheduled a status conference for the following month, on September 23, 2011. Given the circuit court's scheduling order, the West Virginia Supreme Court of Appeals dismissed Petitioner's requests for a writ of mandamus as moot. ECF No. 27-3 at 2. Petitioner moved to file an eighth amended petition for habeas corpus on September 12, 2011. The circuit court ordered Respondent to answer the amended Petition and rescheduled the status conference to October 5, 2011. Subsequently, conflicts again developed between Petitioner and his appointed counsel, and the circuit court entered a second order granting Petitioner's request to proceed *pro se* and appointing new standby counsel. On February 13, 2012, Petitioner filed a ninth amended petition for habeas corpus. The circuit court scheduled an omnibus hearing for May 22, 2012. After Petitioner filed a cumulative supplement to his petition, the circuit court rescheduled the omnibus hearing to June 26, 2012.

The circuit court conducted the omnibus hearing on June 26, 2012. The presiding circuit court judge explained to Petitioner the permissible scope of witness testimony and other evidence that would be properly before the court on the habeas petition. After explaining the nature of the omnibus hearing to Petitioner, the circuit court gave Petitioner the opportunity to provide the court with a list of proposed witnesses and the nature of their testimony. The circuit court repeatedly advised Petitioner that the purpose of a habeas hearing is not to discover new evidence or conduct a new trial of the underlying criminal case. The circuit court even offered to resentence Petitioner to allow Petitioner to take up some of these issues on direct appeal, but

Petitioner declined the offer. *Harper v. Ballard*, No. 08-C-1050 (Cir. Ct. Cabell Cnty. July 5, 2012). The record before this Court indicates that the habeas petition before the circuit court is still pending.

### B. Federal Proceedings

On March 6, 2012, Petitioner filed a *pro se* federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was referred to Magistrate Judge Eifert for submission of proposed findings of fact and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate judge ordered the parties to submit memoranda of law on the threshold issues of timeliness of the petition and exhaustion of state remedies. On August 27, 2012, the magistrate judge issued proposed findings and recommendation, which recommended that this action be dismissed without prejudice for failure to exhaust state remedies. ECF No. 33. Both parties filed objections. ECF Nos. 34, 35. The Court now turns to the magistrate judge's findings and the parties' objections.

## II. ANALYSIS

### A. Standard of Review

This Court's review of the magistrate's proposed findings and recommendations is *de novo*. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."). *De novo* review may be unnecessary, however, where a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citing *United States v. Mertz*, 376 U.S. 192 (1964)).

**B.     Timeliness of Petition**

Respondent objects to the magistrate judge's decision to dismiss the petition on exhaustion grounds only. Respondent argues that the magistrate judge should have resolved whether the petition was timely filed. It is Respondent's position that the petition was not timely and should therefore be dismissed with prejudice. ECF No. 34 at 2.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA" or "the Act") prescribes a one-year statute of limitation for filing a habeas petition. The Act provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d). AEDPA also provides, however, that "[t]he time during which a properly filed application for State post-conviction . . . review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2).

In this case, the applicable time period is calculated based on Section (d)(1)(A). Petitioner has asserted no colorable arguments that: the state impeded his ability to file a petition;

6

the Supreme Court recently recognized a new constitutional right that applies in this case; or that he could not have discovered the factual predicate of his claims until some later time. Therefore, the one-year period in which Petitioner could file his application for habeas corpus began to run when the judgment became final by conclusion of direct review or the expiration of time for seeking such review. The statute requires a two-step analysis in this case. First, the Court must determine whether the petition was filed within the one-year time period. Second, the Court will determine whether any of the intervening time should be excluded due to the pendency of Petitioner's state court habeas petition.

### 1. The initial sentence

Determining the date on which the statute of limitation began to run is complicated in this case, due to Petitioner's multiple sentencings and many amended habeas petitions in the circuit court. The circuit court first sentenced Petitioner on April 20, 2006, after a jury returned a guilty verdict. In West Virginia, defendants must file a direct appeal within four months of sentencing. W. Va. R. Crim. P. 37(b)(3) ("A petition must be filed . . . within four months of the entry of the circuit court order."). Petitioner's time to appeal therefore expired on August 21, 2006. Because Petitioner failed to file an appeal, his judgment became final on that date. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002). Consequently, a federal habeas petition must have been filed by August 21, 2007, in order to be timely under the statute. Petitioner's state and federal habeas petitions were both filed well after this date.[3] If this were the only sentencing date in Petitioner's case, the matter would easily be dismissed as untimely without further analysis. The Court must determine, however, whether Petitioner's subsequent resentencings reset the limitation period.

---

[3] Petitioner's state petition was filed December 12, 2008, and his federal petition filed March 6, 2012.

### 2. Effect of subsequent resentencings

West Virginia courts occasionally resentence defendants in order to afford them an additional four months to file a direct appeal. *See, e.g., Johnson v. McKenzie*, 235 S.E.2d 138 (W. Va. 1977); *Adkins v. Leverette*, 264 S.E.2d 154, 157 (W. Va. 1980). Respondent argues strenuously that the resentencings do not restart the clock for purposes of AEDPA's one-year limitation. The Court disagrees. The AEDPA states that the limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "Final judgment in a criminal case means sentence. The sentence is the judgment." *Burton v. Stewart*, 549 U.S. 147, 156 (2007) (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)). Direct review cannot conclude for purposes of this statute until the availability of direct appeal to the state courts, and to the Supreme Court, has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (citations omitted). Until that time, the process of direct review has not come to an end and a presumption of finality and legality cannot yet have attached to the conviction and sentence. *Id.* at 119-20 (citations omitted).

In *Jimenez*, a Texas state prisoner was initially sentenced and his conviction became final in October 1996. After filing a state habeas petition, the Texas Court of Criminal Appeals granted petitioner the right to file an out-of-time direct appeal of his conviction. Upon the filing of the direct appeal, the state appellate court affirmed his conviction, and the time for seeking certiorari review of that decision expired on January 6, 2004. The United States Supreme Court concluded that for purposes of the AEDPA, the judgment became final on January 6, 2004. The Court thus recognized the possibility that even after a defendant has been convicted and sentenced, his conviction may be subsequently reopened for purposes of § 2244(d)(1)(A).

8

*Jimenez*, 555 U.S. at 120 ("Under the statutory definition, therefore, once the Texas Court of Criminal Appeals reopened direct review of petitioner's conviction . . ., petitioner's conviction was no longer final for purposes of § 2244(d)(1)(A). Rather, the order granting an out-of-time appeal restored the pendency of the direct appeal.") (citations omitted). The Supreme Court stated that the *Jimenez* decision was "a narrow one," applicable "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief." *Id.* at 121. The Court concludes that *Jimenez* is instructive here, where Petitioner was given the opportunity (via resentencing) to file an appeal after the time to do so had expired and before he filed a federal habeas petition.

Respondent argues that Petitioner's resentencings have no effect on AEDPA's statute of limitation. In support, Respondent cites a Sixth Circuit opinion in which the court concluded that the one-year statute of limitation begins to run on the date the resentencing judgment becomes final, but only claims challenging the resentencing decision (as opposed to the original conviction) would be timely if filed within that period. ECF No. 34 at 8; *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006). Accordingly, Respondent argues that Petitioner's original claims are untimely, and the only timely claims he may have are claims concerning any violation of constitutional rights that may have occurred in the resentencing process. The Court finds this argument unpersuasive. First, *Linscott* is not controlling authority in this circuit. Second, *Linscott* preceded the Supreme Court's holding in *Burton*. In habeas cases decided after *Burton*, district courts within the Sixth Circuit and elsewhere have held that when a petitioner has been resentenced, the underlying conviction and most recent sentence authorizing the petitioner's detention together constitute the relevant judgment for statute of limitation purposes. In those circumstances, a timely filed habeas petition may properly raise issues concerning the

9

resentencing and the underlying conviction. *See Johnson v. Warden, Lebanon Corr. Inst.*, Report and Recommendation, No. 1:09cv336, 2010 WL 2889056, at *6-7 (S.D. Ohio June 23, 2010) (collecting cases), *adopted*, 2010 WL 2889057 (July 20, 2010).

Respondent also cites a policy statement from the Eleventh Circuit: "We give strict interpretation to [AEDPA's] one-year statute of limitations to avoid creating a loophole which is contrary to the legislative intent of insuring a greater degree of finality." *Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (citations omitted). Respondent argues that to restart the clock upon each resentencing would create a loophole that eviscerates the one-year limitation and would permit Petitioner to benefit from the "obstructionist behavior" that required the circuit court to resentence him multiple times. It is true that Petitioner's inability or unwillingness to work with his appointed attorneys contributed to the circuit court's resentencing him to extend the time for him to appeal his conviction. The presiding circuit court judge, however, determined that the resentencings were warranted in Petitioner's state criminal case.

Moreover, *Murphy*'s holding is inapplicable here, for at least two reasons. First, *Murphy* addressed the issue of whether a Rule 35 sentence reduction reset the statute of limitation for habeas petitions; it did not involve direct appellate review. Like the other circuits that addressed that issue, including the Fourth Circuit, the court concluded that a reduction under Rule 35 has no effect on the finality of the judgment of conviction for AEDPA purposes. *Murphy*, 634 F.3d at 1307-08 (citing 18 U.S.C. § 3582); *see also United States v. Sanders*, 247 F.3d 139, 142-44 & n.2 (4th Cir. 2001). Second, the United States Supreme Court, in *Jimenez*, 555 U.S. 113, determined that regarding Congress's policy of finality, Congress pinpointed the date of finality in the plain language of Section 2244(d)(1). That statute "carries out AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review

10

the claim, and to correct any constitutional violation in the first instance." *Jimenez*, 555 U.S. at 120-21. Therefore, the Court finds Respondent's arguments unpersuasive. When the circuit court judge resentenced Petitioner to give him an opportunity to file a timely direct appeal, that action rendered the judgment not final for purposes of the AEDPA. The statute of limitations began to run at Petitioner's last resentencing.

Petitioner's latest resentencing occurred on April 30, 2010. Petitioner again failed to use that opportunity to file an appeal. The April 30, 2010 judgment therefore became final four months later, when the time to appeal expired, on or about August 31, 2010. The March 6, 2012 federal petition was filed well outside this period. Once again, if no other proceedings were pending, the matter would easily be dismissed as time barred. By the time he was last resentenced, however, Petitioner had a habeas petition pending before the circuit court.[4] The application of Section 2244(d)(2) may thus render the petition timely.

### 3. Effect of state habeas proceedings

The time in which a *properly filed* application for state post-conviction review with respect to the *pertinent judgment or claim* is pending will be excluded from the one-year time period. 28 U.S.C. § 2244(d)(2) (emphasis added). A habeas application is "properly filed" for purposes of Section 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8, 11 (2000). Time limits on filing, "no matter their form, are 'filing' conditions," such that an untimely state habeas petition does not toll the statute of limitation under Section 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). In West Virginia,

---

[4] The habeas petition before the circuit court is still pending. As a result, Petitioner has failed to exhaust his state remedies and this petition is properly dismissed on exhaustion grounds, as discussed more fully *infra*.

11

timeliness of a state habeas petition is not a concern because "[a] petition for a writ of habeas corpus . . . may be filed at any time after the conviction and sentence in the criminal proceedings have been rendered and imposed and the time for the taking of an appeal . . . has expired or . . . exhausted." W. Va. Code § 53-4A-1(e). There is no indication that the clerk of the circuit court allowed Petitioner's state habeas petition to be filed improperly.[5] Because it appears that the application for state post-conviction review was properly filed, the time period will be tolled if the state petition concerned the pertinent judgment or claim.

After reviewing the voluminous petitions filed in the state habeas proceeding, the Court concludes that the claims pending before the circuit court are the same claims Petitioner asserts in this federal action. *Compare, e.g.,* Fed. Pet., ECF No. 2-1 at 11-17 *with* State Pet., Ex. 3, ECF No. 27-1 at 5 (improper jury instructions); ECF No. 2-1 at 1-10 *with* Ex. 3, ECF No. 27-1 at 5 (insufficient indictment); ECF No. 2-1 at 27-32 *with* Ex. 3, ECF No. 27-1 at 5 (denial of speedy trial); ECF No. 2-2 at 31-36 *with* Ex. 3, ECF No. 27-1 at 5 (ineffective assistance of counsel for failure to file appeal); ECF No. 2-1 at 18-20 *with* Am. State Pet., Ex. 5, ECF No. 27-1 at 19-21 (double jeopardy); ECF No. 2-1 at 21-26 *with* Ex. 5, ECF No. 27-1 at 21-23 (unreasonable seizure). For purposes of Section 2244(d)(2), the pending state habeas petition concerned the same "pertinent claims" as those asserted in the federal habeas petition. Consequently, because those claims were pending in the state court at the time Petitioner's last resentencing became final and when the habeas petition was filed, that time is excluded. Petitioner's federal habeas petition was therefore timely filed.

---

[5] The Circuit Court of Cabell County appears to have deemed even the amended petitions as timely and thus they too appear to be "properly filed" for purposes of § 2244(d)(2). *See* Ex. 2, ECF No. 27-1, *Harper v. Ballard*, No. 08-C-1050 (Cir. Ct. Cabell Cnty. Sept. 15, 2011) (ordering Respondent to file response to Petitioner's amended habeas petition).

### C. Exhaustion of State Remedies

As a prerequisite to filing a Section 2254 action, a petitioner must exhaust state court remedies. 28 U.S.C. § 2254(b)(1)(A). Generally, when a petitioner fails to exhaust his state court remedies, a federal habeas petition should be dismissed. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983). In this case, the magistrate judge found that Petitioner has not exhausted his state court remedies and furthermore, that there is no reason to excuse the exhaustion requirement. Specifically, the magistrate judge found that Petitioner "unquestionably bears some responsibility for the delay here." PF&R at 8. Petitioner requested that the state habeas proceedings be stayed; he requested or instigated the removal of several court-appointed attorneys; and he filed numerous amendments and supplements to his original petition. Each of those actions contributed to the delay in the state habeas proceeding.

Petitioner filed objections to the magistrate judge's findings. Petitioner claims that the magistrate judge applied an incorrect standard to determine whether the delay in state proceedings rendered state remedies ineffective.[6] He argues that while the delay in his state case "may not raise to a level of due process violation," the delay is nonetheless "inordinate, excessive, unjustified and/or inexcusable," such that the exhaustion requirement should be excused. ECF No. 35 at 11. Petitioner's argument is unavailing. The cases cited by Petitioner state that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." *Wojtczak v. Fulcomer*, 800 F.2d 353, 353 (3d Cir. 1986). The Court discerns no difference in these two inquiries and overrules the objection. Even if the Court were to apply the standard as phrased in *Wojtczak*, the result would be no different.

---

[6] The magistrate judge properly stated that the relevant question "is whether the given delay is so extraordinary that it amounts to a violation of the petitioner's right to due process." PF&R at 7 (citing *United States v. Brown*, 292 Fed. App'x 250, 252 (4th Cir. 2008) (citing *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir. 1984))).

For all of the reasons identified in the PF&R, there is no evidence in this case that the state remedy is effectively unavailable to Petitioner and thus the exhaustion requirement is not excused in this case.

Petitioner also objects to the magistrate judge's finding that the delay in the state habeas case was attributable to Petitioner himself. ECF No. 35 at 11. Petitioner again relies on *Wojtczak v. Fulcomer*, 800 F.2d 353, in support of his objection. In *Wojtczak*, the Third Circuit held that a habeas petitioner's failure to exhaust his state court remedies was excused because there was nothing indicating that the petitioner himself was responsible for the delay in the state court proceeding. Like Petitioner here, Wojtczak had several different attorneys representing him in the state proceeding. The court found, however, that the delay caused by the change in representation was not attributable to the petitioner. *Wojtczak*, 800 F.2d at 355-56. In that case, the petitioner's assigned attorneys failed to respond to the petitioner's letters requesting information about the proceeding and at least one attorney withdrew without the petitioner requesting that he do so. *Id.* at 355. Unlike Wojtczak, Petitioner here consistently acted without regard to his attorneys (*e.g.,* by filing *pro se* motions while represented) and asked the circuit court judge several times to permit him to proceed *pro se*, while other times requesting that habeas counsel be appointed. The Court overrules this objection and agrees with the magistrate judge that Petitioner himself contributed to the delay in the state proceeding.

The final objection that merits discussion is Petitioner's argument that the exhaustion requirement should be excused because he raises an actual innocence claim. ECF No. 35 at 19-21. Petitioner argues that the Supreme Court, in *Schlup v. Delo*, 513 U.S. 298 (1995), identified an "actual innocence exception," which allows Petitioner's claim to be reviewed in federal court despite the fact that he has not exhausted his state remedies. In *Schlup*, the petitioner, sentenced

14

to death, sought a writ of habeas corpus by filing a successive petition in which he asserted a claim of actual innocence.[7] The district court dismissed the second habeas petition on procedural grounds. *Schlup*, 513 U.S. at 309. After the Court of Appeals denied his application for a stay of execution, the Supreme Court granted certiorari "to consider whether the *Sawyer* standard[8] provides adequate protection against the kind of miscarriage of justice that would result from the execution of a person who is actually innocent." *Id.* at 301. Schlup's claim of innocence was not itself a constitutional claim, "but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). The Court held that

> if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id.* at 316. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327.

The Court overrules Petitioner's objection on the *Schlup* claim as well. First, Petitioner here is not facing execution, like Schlup and other petitioners who asserted this argument. *See, e.g., Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009). Second, unlike the procedurally barred habeas claims in *Schlup*, Petitioner's claims here are not forever barred. Petitioner is required to first allow the state habeas court to consider his petition. Once Petitioner has exhausted his state

---

[7] Schlup had already exhausted his state collateral remedies and filed an initial *pro se* petition for a writ of habeas corpus, which was denied. *Schlup*, 513 U.S. at 306-07.

[8] Under *Sawyer v. Whitley*, 505 U.S. 333 (1992), a petitioner must show "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner" guilty. *Id.* at 336.

remedies, AEDPA permits him to seek a writ of habeas corpus from a federal court. Finally, Petitioner has failed to produce new evidence that shows it is more likely than not that no reasonable juror would have convicted him in light of that new evidence. Petitioner submitted no affidavits from new witnesses and merely asserts that had his attorney conducted a better investigation, he may have turned up additional witnesses or evidence that would help Petitioner's case. These bald claims are insufficient. Therefore, the Court concludes that the exhaustion requirement should not be excused in this case.

Petitioner's remaining objections are either general in nature or mere restatements of his original arguments and the Court finds them to be without merit. After consideration of Petitioner's objections and a *de novo* review of the PF&R, the Court **ADOPTS** the exhaustion analysis of the Proposed Findings and Recommendation and **INCORPORATES** Section II of the PF&R herein. The Court **FINDS** that Petitioner has failed to exhaust his state court remedies and therefore this action should be dismissed without prejudice.

**D.     Application to Proceed without Prepayment of Fees and Costs**

At the outset of this habeas action, Petitioner filed an Application to Proceed without Prepayment of Fees and Costs. ECF No. 1. The magistrate judge's PF&R recommends that this application be denied. Petitioner objected. The Court has reviewed *de novo* the relevant portion of the PF&R and Petitioner's application. Because the Court concludes that Petitioner lacks sufficient assets to pay the required fees, the Court **GRANTS** Petitioner's Application. The Court notes that the Application is granted for this action only and Petitioner must file additional applications in the future should he seek to proceed without prepayment of fees in any other case.

E.  **Certificate of Appealability**

The Court additionally has considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

### III.  CONCLUSION

For the reasons stated above, the Court **FINDS** that Petitioner's petition for a writ of habeas corpus was timely made, but Petitioner failed to exhaust his state remedies. Accordingly, the Court **ADOPTS IN PART** the Proposed Findings and Recommendation, ECF No. 33, and **DISMISSES** without prejudice Petitioner's petition for a writ of habeas corpus, ECF No. 2. Petitioner's Application to Proceed without Prepayment of Fees and Costs in this matter is **GRANTED**. ECF No. 1. Furthermore, Petitioner's Motion for Partial Summary Judgment and the incidental motions are **DENIED AS MOOT**. ECF Nos. 3, 4, 5, 6, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 30, 37, 38, and 39.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    January 24, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE